ROSEMARY COFONE, PLAINTIFF-APPELLANT, v. ANGELO COFONE, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 5, 1971—Decided April 13, 1971.

Before Judges GOLDMANN, LEONARD and FRITZ.

*Mr. Robert L. Doris, Jr.* argued the cause for appellant (*Mr. Elliot M. Baumgart,* Administrator, Essex County Legal Services Corp., attorney).

Respondent did not file a brief.

PER CURIAM. Plaintiff sought a divorce on the ground of defendant's adultery with Rita Chizmar. Her action was uncontested. Judgment of dismissal was entered in the Chancery Division and she appeals.

All that plaintiff in her testimony offered by way of proof of adultery was that defendant had told her "he was seeing [Miss Chizmar] before we were married, and he was still going with her"; that she had once found a pair of de-

fendant's pants soaking in the bathroom washbasin with white stains on the front, and that she had seen defendant get out of Miss Chizmar's car at night when it stopped on a side street across from the marital home.

Miss Chizmar testified that she was friendly with defendant and had maintained a relationship with him until October 1969, a date some six months before trial. The following ensued during her direct examination by plaintiff's attorney:

Q. During the period of his marriage did you commit adultery with him?

A. Yes, I did.

THE COURT: Wait a minute. She has rights under the United States Constitution. You should not have asked her that question. There is nobody here to protect her, and she answered it too fast for me to protect her, but you are a lawyer. She has no understanding and has not been given any understanding on the record here that she has certain rights under the Fifth Amendment to the United States Constitution and could avail herself of them. Now she has put herself in a position, where she could probably be or might probably be indicted by a Grand Jury.

I will strike the question and strike the answer, and I will say that you cannot prove adultery out of the mouth of an alleged adulteress, except in a very rare, hotly contested case, and this is not that sort. Go ahead.

Q. During the period of that relationship how often did you see Mr. Cofone?

A. I would say about a few times a week.

Q. Did you see him in circumstances where you were alone with him?

A. Yes.

Q. The two of you together?

A. Yes, I did.

Q. Did that sort of circumstances exist up until October of 1969?

A. Yes, it did.

Joseph Curto, a friend of defendant, added little to the proofs. He said that he had seen defendant in his (defendant's) father's apartment in the spring of 1968. When he walked into the place through an open door, he found defendant in his shorts and a woman on the bed. He could not positively identify the woman. He had also seen defendant and

Miss Chizmar together a few times, once in a car in the spring of 1969.

On recall, Miss Chizmar denied that she was in the apartment of defendant's father when Curto walked in.

In denying a divorce the trial judge stated that he believed the situation was a collusive one. He disbelieved all of Curto's testimony and much of plaintiff's.

██ The trial judge was mistaken when he said that "you cannot prove adultery out of the mouth of an alleged adultress, except in a very rare, hotly contested case." A co-respondent's testimony is direct proof of the commission of the offense, and while open to suspicion, it is admissible as primary evidence. *Hedden v. Hedden,* 21 *N. J. Eq.* 61, 65 (Ch. 1870) ; *DeDonis v. DeDonis,* 1 *N. J.* 43, 45 (1948). Without corroborative proof, such testimony is ordinarily insufficient as a basis for a judgment. *Renner v. Renner,* 13 *N. J. Misc.* 749 (Ch. 1935) ; 12 *N. J. Practice (Herr, Marriage, Divorce and Separation)* (3d ed., Lodge, 1963), § 2279 at 465 and § 2290 at 488. The co-respondent's testimony as to adultery should have been allowed, after she had first been warned of her Fifth Amendment rights.

But this does not resolve the matter. Any consideration of an adultery case must begin with *Berckmans v. Berckmans,* 16 *N. J. Eq.* 122 (Ch. 1863), where the court, in language that has often been repeated, said:

To establish the existence of adultery, the circumstances must be such as would lead the guarded discretion of a reasonable and just man to that conclusion. It must not be a rash and intemperate judgment, moving upon appearances that are equally capable of two interpretations. * * *

The facts proven must be such as cannot be reconciled with probability and the innocence of the parties. * * *

Mere imprudence, indiscretion or folly, is not conclusive evidence of guilt. The mind of the court must be satisfied that there was an intimacy between the parties, entirely inconsistent with the duty which a virtuous wife owes to herself and to her husband.

* * * Where the conduct of a party admits of two interpretations, equally consistent with probability, the one involving guilt and the other consistent with innocence, the rule of evidence as well as the

dictates of justice, require that the interpretation should be favorable to innocence. [At p. 140; citations omitted]

The language of our former Court of Errors and Appeals in affirming *Berckmans* is even stronger. See 17 *N. J. Eq.* 453, 454 (1864). The court said that the charge of adultery, if true, is known as a crime, and its prosecution partakes strongly of the nature of a criminal proceeding, so much so that the complaining spouse must prove the charge "beyond a reasonable doubt."

*Berckmans* was quoted with approval in *Eberhard v. Eberhard,* 4 *N. J.* 535, 545–546 (1950). Our Supreme Court there said that the heart of the *Berckmans* rule is that where there are two interpretations of the conduct of the accused party, equally consistent with probability, the interpretation should be favorable to innocence.

Had Miss Chizmar's testimony been received, would there be sufficient corroboration such as to establish adultery within the rule enunciated in *Berckmans*? The answer must be in the negative. The only corroboration would be plaintiff's, who testifed, simply, that her husband admitted he continued seeing the co-respondent, and that she had seen her husband get out of Miss Chizmar's car at night. Although the record strongly suggests collusion, see *Welch v. Welch,* 35 *N. J. Super.* 255 (App. Div. 1955), we rest our affirmance on the fact that adultery was not proved.

Affirmed.